# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HIGHWAY EQUIPMENT COMPANY, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 14 C 8342 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| ERMAK USA, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ERMAKSAN TURKEY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In September 2012, Plaintiff Highway Equipment Company ("Plaintiff") sent Defendant Ermak USA, Inc. ("Ermak USA") a purchase order for a Fibermak Laser Cutting Machine, an expensive piece of equipment that is used to cut sheet metal. It was to be manufactured and shipped by Defendant Ermaksan Turkey ("Ermaksan"). Dissatisfied with the final product, Plaintiff brought suit against Ermak USA and Ermaksan (together, "Defendants"), alleging various contractual claims under Illinois statutory and common law. In response, Ermak USA brought contract-based counterclaims of its own against Plaintiff. Defendants have now moved for summary judgment with regard to all of Plaintiff's claims and Ermak USA's counterclaims. For the reasons provided herein, their motion for summary judgment [48] is denied.

# Factual Background[1]

Plaintiff is an Iowa corporation that manufactures large-scale farm and municipal equipment. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1, ECF No. 52-2. Its principal place of business is in Linn County, Iowa. Defs.' LR 56.1(a)(3) Stmt. ¶ 1, ECF No. 48-1. Ermak USA is an Illinois corporation with its principal place of business in Elk Grove Village, Illinois. *Id.* ¶ 2. Ermaksan is a Turkish corporation with its principal place of business in Turkey. *Id.* ¶ 3.

Around July 2012, Plaintiff and Ermak USA began negotiations regarding Plaintiff's purchase of a fiber laser cutter. *Id.* ¶ 7. In connection with these negotiations, Ermak USA provided Plaintiff with a quote for a Fibermak Laser Cutting Machine ("the Fibermak"). *Id.* ¶ 13. Shortly thereafter, Plaintiff sent Ermak USA a purchase order for the Fibermak. *Id.* ¶ 14. On September 6, 2012, Ermak USA acknowledged the purchase order by sending an order acknowledgment, which included the final "Special Terms and Conditions" governing the Fibermak's sale. *Id.* ¶ 15.

Under the Special Terms and Conditions, Plaintiff agreed to pay Ermak USA a total of $777,500 on an installment basis in exchange for the manufacture and shipment of the Fibermak. *Id.*, Ex. 12, at 1, 6–7. For its part, Ermak USA agreed that the Fibermak would be shipped to Norfolk, Virginia, at which point it would be loaded onto Plaintiff's truck and shipped to Plaintiff's facility in Cedar Rapids,

---

[1] The following facts are undisputed except where noted.

Iowa. *See id.*, Ex. 12, at 1.[2] Ermak USA further agreed that the Fibermak would be covered by Ermak USA's two-year "Manufacturer's Limited Warranty" and that "English speaking service technicians based in the Chicago area" would be available to provide free service support. *Id.*, Ex. 12, at 2, 9.

The Special Terms and Conditions also set forth criteria for Plaintiff's acceptance of the Fibermak. *See* Defs.' LR 56.1 Stmt. ¶ 18; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 13, ECF No. 52-1. In pertinent part, these criteria read as follows:

> Acceptance of the [Fibermak] is a three step process based on the satisfactory completion of test cutting at Ermaksan in Bursa, Turkey on the specific machine purchased by [Plaintiff] and then the satisfactory replication of the same test cutting following installation and startup of the machine at [Plaintiff's facility] in Cedar Rapids, IA. Final acceptance occurs when the operator and maintenance training is complete in Cedar Rapids, IA.

Defs.' LR 56.1 Stmt., Ex. 12, at 7–8.

In February 2013, Plaintiff's employees traveled to Bursa, Turkey, to observe test cutting on the Fibermak at Ermaksan's facilities. Defs.' LR 56.1 Stmt. ¶ 20. The parties agree that this test cutting failed to meet several requirements. In particular, Ermaksan "never met the speed requirement of 4kw during the test cutting, did not meet the burr requirements for the 1/4" 304 steel, and did not have a completed [Fibermak] as the lift table and table stops were not complete." Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 10. Nevertheless, on May 8, 2013, installation of the Fibermak

---

[2] The Special Terms and Conditions specify an arrival date in Norfolk no later than "January 11, 2012." Defs.' LR 56.1 Stmt., Ex. 12, at 1. Given that the parties' negotiations began in July 2012 and Ermak USA sent the final version of the Special Terms and Conditions in September 2012, this arrival date appears to contain a typographical error. For example, perhaps the parties intended to specify an arrival date of January 11, 2013, rather than January 11, 2012. The parties' filings do not address this discrepancy.

3

began at Plaintiff's facility in Cedar Rapids, Iowa. Defs.' LR 56.1 Stmt. ¶ 23. Defendants acknowledge that the installation process began later than the agreed-upon date on which installation was supposed to begin. *Id.*

The details of what happened after installation began remain the subject of much dispute. According to Defendants, installation of the Fibermak was completed soon thereafter on May 22, 2013, and test cutting on the Fibermak at Plaintiff's facility was completed on June 7, 2013. *Id.* ¶¶ 25–26. Defendants assert that the Fibermak was fully operational at the time of this test cutting. *Id.* ¶ 26. By contrast, Plaintiff denies these assertions, claiming that installation remained incomplete as of May 22, 2013, because the Fibermak's "cut loss sensor" had not yet been installed. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 25. Plaintiff further claims that the Fibermak was not fully operational as of June 7, 2013, because key components of the Fibermak—namely, "loss of cut and opposite hand construction and the related reference point"—also had not been installed by that date. *Id.* ¶¶ 27–28.

From May 2013 to March 2014, the Fibermak had difficulty maintaining cut quality and running in production mode. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 13. These issues required seven or eight on-site service visits by Ermak USA's technicians. *See* Defs.' LR 56.1 Stmt. ¶ 33. Defendants claim—while Plaintiff denies—that "[a]ll material issues were resolved during these site visits." *Id.* ¶ 34; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 34.

Defendants' final service visit to Plaintiff's facility took place from February 10 to March 7, 2014. Defs.' LR 56.1 Stmt. ¶ 36. During this visit, one of Defendants'

4

technicians provided technical support, installed a new cutting head, installed loss-of-cut monitoring, and conducted further test cutting on the Fibermak. *Id.* Defendants claim that the Fibermak was functioning properly as of March 7, 2014, as a result of its technician's work. *Id.* ¶ 37. Plaintiff, however, maintains that the Fibermak continued to malfunction and still was not operating in full production mode. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 37; Pl.'s LR. 56.1(b)(3)(C) Stmt. ¶¶ 33–36.

More problems with the Fibermak arose after this final service visit. According to Defendants, on March 10, 2014, one of Plaintiff's employees damaged two components of the Fibermak's cutting head—namely, the "ceramic" and the "pin"—while operating the Fibermak. Defs.' LR 56.1 Stmt. ¶¶ 39–40. But according to Plaintiff, the pin fell out of the cutting head on its own on March 10, and its employee did not damage the ceramic until March 13. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 39–40.

On April 2, 2014, Plaintiff sent Defendants a letter asking them to remove the Fibermak and refund all of Plaintiff's payments. Defs.' LR 56.1 Stmt., Ex. 39. The letter also stated: "We are rejecting your machine since we have never accepted it due to Ermak's failure to perform. To the extent you claim we have accepted it, we hereby revoke our acceptance." Defs.' LR 56.1 Stmt. ¶ 56. Defendants never responded to this letter. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 37.

From April to November 2014, Plaintiff attempted to resell the Fibermak to other companies. Defs.' LR 56.1 Stmt. ¶ 58. These attempts were unsuccessful, and Plaintiff subsequently filed this lawsuit. *See id.* ¶ 60.

5

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

**I.    Count I: Recovery of Payment Based Upon Refusal to Accept Goods**

In Count I of its Amended Complaint, Plaintiff seeks to recover the payments it made to Defendants in exchange for the Fibermak's manufacture and shipment. In support, Plaintiff advances the theory that it never accepted the Fibermak and is therefore entitled to recover these payments under 810 Ill. Comp. Stat. 5/2-711.

Under Illinois law, "acceptance of goods occurs when the buyer, after a reasonable opportunity to inspect the goods, (1) notifies the seller of acceptance, (2) fails to make an effective rejection or (3) does any act inconsistent with the

6

seller's ownership." *Midwest Generation, LLC v. Carbon Processing & Reclamation, LLC*, 445 F. Supp. 2d 928, 933 (N.D. Ill. 2006) (quoting *Phil Jacobs Co. v. Mifflin*, 320 N.E.2d 329, 332 (Ill. App. Ct. 1974)) (internal quotation marks omitted); *accord* 810 Ill. Comp. Stat. 5/2-606. Whether an acceptance or rejection of goods has occurred is a question for the trier of fact. *Bank of Am., N.A. v. R.B. Gustafson Co.*, No. 10 CV 1608, 2012 WL 3134003, at *5 (N.D. Ill. July 31, 2012) (citing *Alden Press, Inc. v. Block & Co., Inc.*, 527 N.E.2d 489, 495 (Ill. App. Ct. 1988)).

In moving for summary judgment as to Count I, Defendants contend that the undisputed facts show that Plaintiff (1) notified them of acceptance of the Fibermak, (2) failed to effectively reject the Fibermak, and (3) took acts inconsistent with Defendants' ownership. For the reasons explained below, however, none of these arguments is persuasive, and Defendants' motion for summary judgment as to Count I is denied.

### A. Notification of Acceptance

In arguing that Plaintiff notified them of acceptance of the Fibermak, Defendants point to two primary pieces of evidence. First, they point to an Ermak USA service report that Plaintiff signed on June 7, 2013. They contend that the service report indicates Plaintiff's acceptance of the Fibermak subject only to the future installation of loss-of-cut monitoring, opposite-handed material stops, and the corresponding reference point. Mot. Summ. J. at 3–4, ECF No. 48; *see also* Defs.' LR 56.1 Stmt. ¶ 28. Building on this argument, Defendants maintain that Plaintiff had no right to condition its acceptance on the future installment of these "additional" components, because the components were not required under the

7

Special Terms and Conditions. Defs.' LR 56.1 Stmt. ¶¶ 28–29. For its part, Plaintiff insists that inclusion of these components was, in fact, required under the Special Terms and Conditions. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 28–29. Plaintiff also denies that the service report constituted notice of acceptance, arguing that the report instead indicated Plaintiff's *lack* of acceptance by expressly noting a condition antecedent to acceptance. *Id.* ¶ 28.

Defendants also point to a letter that Plaintiff sent them on March 14, 2014. Mot. Summ. J. at 4. In the letter, one of Plaintiff's representatives praised the work of Defendants' service technicians and stated that Ermaksan "was successful in completing the necessary requirements to allow [Plaintiff] to begin operating the machine." Defs.' LR 56.1 Stmt. ¶ 49. Plaintiff argues that this letter, though laudatory, cannot be construed as a notification of acceptance, because the final paragraph of the letter expressly conditioned Plaintiff's acceptance upon the Fibermak's continued and successful operation per the parties' criteria for acceptance. Resp. at 16, ECF No. 52. Defendants counter that the initially agreed-upon criteria for acceptance had been satisfied as of June 7, 2013, Reply at 3–6, ECF No. 53, while Plaintiff insists that neither the initially agreed-upon criteria nor additional criteria set forth via e-mail correspondence were ever satisfied, Resp. at 10–14.

Having considered the parties' arguments, it is clear to the Court that whether Plaintiff accepted the Fibermak by providing Defendants with notification of acceptance in either the June 7 service report or the March 14 letter is an issue rife with underlying factual disputes. A reasonable jury considering these disputes

8

and weighing the evidence before it could find in Plaintiff's favor as to this matter. *See Alden*, 527 N.E.2d at 495. As such, Defendants are not entitled to summary judgment based upon Plaintiff's purported notification of acceptance.

### B. Failure to Effectively Reject

Next, Defendants argue that Plaintiff accepted the Fibermak by failing to effectively reject it. Under Illinois law, a rejection of nonconforming goods is effective only if it is (1) made within a reasonable time after the goods' delivery and (2) communicated seasonably to the seller. 810 Ill. Comp. Stat. 5/2-602(1); *Softa Grp., Inc. v. Scarsdale Dev.*, 632 N.E.2d 13, 16 (Ill. App. Ct. 1993)). A rejection of nonconforming goods must be "clear and unambiguous" in order to be seasonable, and "a mere complaint about the quality of the goods does not satisfy this standard." *Marmi E. Graniti D'Italia Sicilmarmi S.p.A. v. Universal Granite & Marble*, 757 F. Supp. 2d 773, 779–80 (N.D. Ill. 2010). That said, "[t]he reasonableness of a rejection of goods is ordinarily a question for the trier of fact." *Alden*, 527 N.E.2d at 495.

A central piece of evidence bearing on whether Plaintiff effectively rejected the Fibermak is the letter that Plaintiff sent Defendants on April 2, 2014. In this letter, Plaintiff expressly stated: "We are rejecting your machine since we have never accepted it due to Ermak's failure to perform." Defs.' LR 56.1 Stmt. ¶ 56. Defendants do not appear to dispute that, to the extent this letter attempted to reject the Fibermak, the letter was clear and unambiguous on its face. Rather, Defendants argue that the attempted rejection was ineffective solely on the ground that the letter was not sent within a reasonable amount of time after the Fibermak's installation in May 2013. Mot. Summ. J. at 5; Reply at 6.

9

In response, Plaintiff raises two genuine disputes of material fact. First, Plaintiff contends that it clearly communicated its revocation prior to April 2, 2014, in various e-mails that it sent to Defendants. Resp. at 7–8. Some of the e-mails to which Plaintiff points appear to constitute "mere complaint[s]" about the Fibermak's quality, and, as noted above, such complaints are generally insufficient to constitute rejection. *Marmi*, 757 F. Supp. 2d at 780. But other e-mails present a closer question. For example, on March 22 and 27, 2014, Plaintiff sent e-mails informing Defendants of its desire to return the Fibermak for a full refund. *See* Resp. at 8. Though these e-mails perhaps do not reject the Fibermak as clearly as the April 2 letter does, a reasonable jury drawing inferences in Plaintiff's favor might nevertheless conclude that Plaintiff rejected the Fibermak prior to April 2, 2014. *See Alden*, 527 N.E.2d at 495 (internal quotation marks omitted) ("[W]hether conduct has amounted to an acceptance or a rejection of goods is a question of fact to be determined within the framework of the facts of each particular case.").

Second, Plaintiff asserts that, even assuming the April 2 letter was its earliest unequivocal rejection of the Fibermak, the timeliness and reasonableness of this rejection are issues of fact that must be determined by a jury in light of the unique circumstances surrounding the parties' dispute. *Id.* at 9. Plaintiff is correct in this assertion; it is well established that the reasonableness of a rejection of goods is a question for the trier of fact. *See, e.g.*, *Alden*, 527 N.E.2d at 495; *Bank of Am.*, 2012 WL 3134003, at *6 ("Jurors are [ ] entitled to examine the circumstances surrounding [the] rejection [of goods]."). For these reasons, Defendants are not

entitled to summary judgment based upon Plaintiff's purported failure to effectively reject the Fibermak.

### C. Acts Inconsistent with Defendants' Ownership

Finally, Defendants contend that Plaintiff accepted the Fibermak by acting in a manner inconsistent with Defendants' continued ownership. In support, Defendants rely upon the undisputed fact that Plaintiff attempted to resell the Fibermak in 2014. Mot. Summ. J. at 5–6 (citing Defs.' LR 56.1 Stmt. ¶ 58).

Defendants correctly note that the "[r]esale of goods—even after a timely rejection—has long been recognized as inconsistent with the seller's continued ownership and as constituting an acceptance of the goods." *Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Grp., Inc.*, 218 F. Supp. 2d 974, 978 (N.D. Ill. 2002) (emphasis omitted). But Defendants cite no case law in support of the broader proposition that a mere *attempt* to resell goods is so inconsistent with a seller's ownership of goods to constitute acceptance as a matter of law. Rather, the question whether Plaintiff accepted the Fibermak through its unsuccessful attempt at resale remains an issue that must be resolved by a jury. *See Alden*, 527 N.E.2d at 495 (citing *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 408 (Ill. App. Ct. 1980)) ("The overriding rule is that, in determining whether a buyer has so wrongfully exercised ownership over the goods as to be barred from rejecting them, the trier of fact must apply a rule of reasonableness.").

Furthermore, even assuming *arguendo* that Plaintiff's attempted resale was inconsistent with Defendants' ownership of the Fibermak, the attempted resale cannot have constituted acceptance if (1) Plaintiff previously rejected the Fibermak

11

and (2) Defendants failed to give Plaintiff instructions within a reasonable time after the rejection regarding the Fibermak's storage, resale, or return to Defendants. *See* 810 Ill. Comp. Stat. 5/2-604. As such, the question of whether the attempted resale constituted acceptance is inextricably intertwined with the threshold question of whether Plaintiff had effectively rejected the Fibermak in the first place. The latter question involves disputes of fact, as explained *supra*, and the interdependence of these questions is another reason why Defendants' motion for summary judgment as to Count I must be denied.

## II. Count II: Recovery of Payments Based Upon Revocation of Acceptance

In Count II, Plaintiff alternatively seeks to recover its payments for the Fibermak on the theory that, assuming it accepted the Fibermak, it subsequently revoked acceptance under 810 Ill. Comp. Stat. 5/2-711. In particular, Plaintiff argues that it revoked its acceptance in its letter dated April 2, 2014, in which it stated: "We are rejecting your machine since we have never accepted it due to Ermak's failure to perform. To the extent you claim we have accepted it, *we hereby revoke our acceptance*." Defs.' LR 56.1 Stmt. ¶ 56 (emphasis added); *see also* Resp. at 20–21.

Under Illinois law, a buyer may revoke its acceptance of a nonconforming good where (1) the nonconformity substantially impaired the good's value, (2) the buyer accepted the good on the reasonable assumption that the nonconformity would be cured, and (3) the nonconformity was not seasonably cured. 810 Ill. Comp. Stat. 5/2-608(1). Revocation must occur "within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in

12

condition of the goods which is not caused by their own defects." *Id.* 5/2-608(2); *see also N. Am. Lighting, Inc. v. Hopkins Mfg. Corp.*, 37 F.3d 1253, 1257 (7th Cir. 1994).

According to Defendants, the undisputed facts show that any nonconformity in the Fibermak was cured by March 7, 2014; that any damage thereafter was the result of mishandling by Plaintiff's own employee; and that any uncured nonconformity did not substantially impair the Fibermak's value. Mot. Summ. J. at 10–11. Based upon this account of the facts, Defendants argue that Plaintiff cannot prove it revoked its prior acceptance of the Fibermak.

Defendants' argument is unavailing, however, because it overlooks several disputes of material fact. First, Plaintiff has adduced evidence suggesting that not all nonconformities were cured by March 7, 2014. For example, Plaintiff cites testimony in which its employees, as well as one of Defendants' employees, state that the Fibermak was never able to operate in full production mode. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 36. Plaintiff also points to an affidavit in which its manufacturing engineer states that a piece of the Fibermak fell off the cutting head on March 10, 2014, prior to the later damage caused by Plaintiff's employee. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 40. Drawing reasonable inferences in Plaintiff's favor, such evidence gives rise to a triable issue as to whether Defendants seasonably cured the Fibermak's nonconformities by March 7, 2014. In addition, whether any uncured nonconformities substantially impaired the Fibermak's value is a fact-intensive issue properly within the jury's purview. *See N. Am. Lighting*, 37 F.3d at 1257; *Alden*, 527 N.E.2d at 493. For these reasons, summary judgment with regard to Count II is unwarranted.

13

**III. Count III: Breach of Contract**

In Count III, Plaintiff brings a claim for breach of contract. A plaintiff seeking to prevail on a breach of contract claim under Illinois law must prove four elements: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

Here, among other agreed-upon terms, the parties' contract called for the Fibermak's manufacture and shipment, specified the Fibermak's arrival date within the United States, and represented that English-speaking service technicians based in the Chicago area would be available to provide technical support for the Fibermak.[3] Defs.' LR 56.1 Stmt., Ex. 12. Plaintiff claims that Defendants breached this contract in a number of ways, including by failing to deliver a Fibermak capable of operating in full production mode, failing to timely deliver and install the Fibermak, and failing to provide English-speaking service technicians based in

---

[3] These terms are included in the Special Terms and Conditions, which the parties agree contained terms that were part of their contract. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2, ECF No. 53-2.

The Court acknowledges that, by contrast, the parties presently dispute whether two additional documents—the original quote from Ermak USA and an invoice dated September 6, 2012—also contained binding contractual terms. *See id.* For two independently sufficient reasons, however, the Court declines to address this point of disagreement. First, as explained herein, Plaintiff has raised triable issues of fact as to whether Defendants breached the Special Terms and Conditions. As such, the issue of whether the quote and invoice supplemented the Special Terms and Conditions is immaterial to the disposition of Defendants' motion for summary judgment. Second, Defendants unequivocally admitted in their answers to Plaintiff's Amended Complaint that the quote and invoice were part of the contract. *See* Ermak USA's Answer ¶ 15, ECF No. 27; Ermaksan's Answer ¶ 15, ECF No. 28. Such admissions are binding, and Defendants have offered no explanation as to why the Court should disregard them at this late stage.

14

Chicago. *See* Resp. at 22–23. In support, Plaintiff offers abundant testimonial evidence that the Fibermak never operated in full production mode, Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 36, as well as undisputed evidence that installation of the Fibermak began later than the agreed-upon date, Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 23. Plaintiff also notes that no service technicians were based in the Chicago area until June 2015, several months after this lawsuit was filed, Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 5.

For their part, Defendants assert that there is no genuine dispute as to whether they breached their sales contract with Plaintiff. But this assertion ignores the many pieces of evidence that Plaintiff has offered with regard to the element of breach. Plaintiff's evidence plainly creates a triable issue of fact as to whether Defendants breached their contract, and Defendants' motion for summary judgment as to Count III is thus denied.

### IV. Count IV: Breach of Express Warranty

Finally, in Count IV, Plaintiff brings a claim for breach of express warranty. To prevail on a claim for breach of express warranty, a plaintiff "must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain." *Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 634 (Ill. App. Ct. 2001). Here, Plaintiff alleges that Defendants are liable for breach of express warranty because they failed to replace the Fibermak or repair its defects as promised in their two-year Manufacturer's Limited Warranty.

While Defendants acknowledge that the Manufacturer's Limited Warranty was part of the parties' bargain, Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2, they

argue that they did not breach this warranty and that they are therefore entitled to summary judgment on this claim. In support, Defendants assert that they satisfied their obligations under the Manufacturer's Limited Warranty by repairing the Fibermak in a manner that rendered it fully operational as of March 7, 2014. Mot. Summ. J. at 14. In addition, they contend that the warranty did not obligate them to make any further repairs after March 7, 2014, because any subsequent damage to the Fibermak was caused by Plaintiff's own employee and thus was outside the warranty's scope. *Id.*; *see also* Defs.' LR 56.1 Stmt., Ex. 46, at 2 (stating the terms of the Manufacturer's Limited Warranty).

As noted above, however, Plaintiff argues that the Fibermak was still not fully operational as of March 7, 2014, and has offered ample evidence in support of its position that the Fibermak never attained full functionality. *See* Resp. at 24; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 36. Plaintiff has thus raised a genuine dispute of material fact as to whether Defendants fulfilled their obligation under their express warranty to replace the Fibermak or repair its defects. For this reason, Defendants' motion for summary judgment as to Count IV is denied.

## V. Ermak USA's Counterclaims

In exchange for the Fibermak's manufacture and shipment, Plaintiff agreed to pay Ermak USA $777,500 on an installment basis. *Id.*, Ex. 12, at 1, 6–7. It is undisputed, however, that Plaintiff never paid the final installment payment of $77,750. Defs.' LR 56.1 Stmt. ¶ 67. On this basis, Ermak USA has brought a counterclaim against Plaintiff, seeking to recover the outstanding $77,750 installment payment under 810 Ill. Comp. Stat. 5/2-709. In the alternative, Ermak

16

USA has also alleged a counterclaim for breach of contract, seeking to recover the same amount.

In their motion for summary judgment, Defendants argue that, in the event the Court were to enter summary judgment in their favor with regard to all four counts of Plaintiff's Amended Complaint, Ermak USA would necessarily be entitled to summary judgment in its favor as to its counterclaims. Mot. Summ. J. at 15. Defendants advance no other arguments in moving for summary judgment as Ermak USA's counterclaims. Given that Defendants are not entitled to summary judgment as to any of Plaintiff's claims, Defendants' motion for summary judgment as to Ermak USA's counterclaims is denied.

## Conclusion

For the reasons stated herein, Defendants' motion for summary judgment [48] is denied. A status hearing will be held at 9:00 a.m. on Tuesday, April 11, 2017, at which point the parties should be prepared to set deadlines for pretrial filings, a date for the pretrial conference, and a date for trial.

**IT IS SO ORDERED.**          ENTERED   3/22/17

*[signature: John Z. Lee]*

_____

**John Z. Lee**
**United States District Judge**